## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR 07-20009 |
| | ) | |
| GENE SUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S RESPONSE TO
### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

NOW COMES the United States of America, by Rodger A. Heaton, United States

Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United

States Attorney, and in response to Defendant's Motion to Suppress Evidence, filed

pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, states as follows:

### RELEVANT FACTS

Upon information and belief, the United States understands that the evidence

adduced during the suppression hearing of this matter will establish the following:

In the fall of 2006, a confidential source, (CS), who had previously been arrested

on multiple drug charges, was assisting law enforcement agents in the hopes of

receiving favorable treatment regarding the potential criminal charges.  The CS told law

enforcement officers that the CS had purchased approximately 2 1/4 ounces of crack

cocaine per week from the defendant, Gene Sutton, over the past year.

On November 1, 2006, agents of the Drug Enforcement Administration (DEA)

and Kankakee Metropolitan Enforcement Group (KAMEG), a multi-jurisdictional drug task force located in Kankakee County, Illinois, used a CS to purchase 61.9 grams of cocaine hydrochloride from the defendant in exchange for $1,500. The drug transaction took place at a blue trailer located at 3973 South Ridge Road, St. Anne, Kankakee County, in the Central District of Illinois. The meeting was audio recorded, as were the telephone conversations between the defendant and the CS to arrange the transaction.

On November 27, 2006, agents of the DEA and KAMEG used a CS to purchase 26.3 grams of cocaine base ("crack") from the defendant in exchange for $600. The drug transaction took place in a parking lot at 1035 Mulligan Drive, Bradley, Kankakee County, in the Central District of Illinois. The meeting was audio recorded, as were the telephone conversations between the defendant and the CS to arrange the transaction.

On December 14, 2006, agents of the DEA and KAMEG used a CS to purchase 124.4 grams of cocaine base ("crack") from the defendant in exchange for $2,500. The drug transaction again took place at a blue trailer located at 3973 South Ridge Road, St. Anne, Kankakee County, in the Central District of Illinois. The meeting was audio and video recorded; the telephone conversations between the defendant and the CS to arrange the transaction were also audio recorded. While inside the trailer, the CS observed the defendant place approximately one ounce of crack cocaine in his jacket pocket.

Soon after the CS left the trailer, agents observed the defendant leave the trailer and drive away in a black GMC truck. DEA Special Agent Christopher Hoyt conducted

2

surveillance on the black GMC in Agent Hoyt's unmarked vehicle and observed the defendant pull into a driveway and stare at Special Agent Hoyt as he drove by. After that, the defendant pulled out of the driveway and began evasive driving, including driving away at a high rate of speed in excess of the 55 mile per hour rural speed limit and disregarding a stop sign. Special Agent Hoyt was unable to keep up with the defendant and radioed to other officers. KAMEG Special Agents J. Martin and J. Powers activated their emergency lights and attempted to make a traffic stop on the black GMC, but the defendant failed to stop. Ultimately, the defendant attempted to make a left turn into a sandy field entrance and his vehicle became stuck in the sand. The defendant refused the officers' order to get out of the black GMC and was forcibly removed from the vehicle by Special Agents Martin and Powers. The defendant resisted being handcuffed, as the officers forcibly placed the handcuffs on him.

After the defendant was arrested, KAMEG Special Agent Clayt Wolfe arrived and found approximately 50.4 grams of cocaine base ("crack") and 7.6 grams of cocaine hydrochloride in baggies on the ground next to the truck by the driver's side door of the GMC. Inside the GMC on the passenger's side floor board, Agent Wolfe found a Smith & Wesson, nine millimeter semi-automatic pistol and a magazine containing 16 rounds of nine millimeter ammunition. On the driver's side floor board, Agent Wolfe found the $2,500 that the CS had previously paid to the defendant for the 124.4 grams of cocaine base ("crack"). On the seat of the GMC, Agent Wolfe found two cellular telephones and a black gun case.

Following his arrest, the defendant was taken to the Bourbonnais Police Department, where officers found an additional $810 and another cellular telephone on his person. The agents advised the defendant of his constitutional rights, known as the Miranda warnings. The defendant indicated that he understood his rights and agreed to answer some questions related to his drug trafficking activities. The defendant admitted that the crack and powder cocaine found at the time of his arrest belonged to him. He admitted he had recently purchased 13 ½ ounces (approximately 378 grams) of powder cocaine, part of which he had cooked up into crack cocaine. He acknowledged that, just prior to his arrest, he had delivered some of that crack cocaine to an individual, and the cocaine that he had in his possession at the time of his arrest represented what was left over from that delivery. He admitted that he had previously purchased the Smith & Wesson nine millimeter pistol at K's Merchandise Mart as protection because he had been shot in the past. He further admitted that in the past he had purchased multiple kilograms of cocaine for distribution, including purchasing two kilograms of cocaine approximately three weeks before his arrest for $19,000 per kilogram. He claimed the most cocaine he had ever brokered at one time was seven kilograms.

## ARGUMENT

In his motion to suppress evidence, the defendant seeks to suppress the cocaine base ("crack"), cocaine hydrochloride, gun, and other evidence found in the GMC, as well as any statements he made to law enforcement officers following his arrest. The

4

lynchpin of the defendant's argument is that the agents seized the defendant's vehicle
without a reasonable, articulable suspicion that the defendant had committed an offense
and then arrested the defendant and searched the GMC without probable cause.[1]  The
defendant's argument fails because, by the time the agents were actually able to seize
the defendant's vehicle, they could arrest him based on probable cause to believe he
had committed numerous offenses.  Additionally, they could lawfully search the
defendant's GMC (1) incident to his lawful arrest; (2) based on probable cause it would
contain additional drug evidence; and (3) pursuant to their inventory policy.  Finally,
given that the stop and arrest of the defendant and the search of the GMC were lawful,
the defendant's statements should not be suppressed as fruit of the poisonous tree.[2]

I.      **The Agents Properly Detained and Arrested the Defendant after He
        Completed a Drug Transaction and Fled from Them During a High Speed Car
        Chase**

        In the instant case, the defendant never voluntarily pulled over in response to the
agents' attempt to stop him.  Instead, after fleeing at a speed well in excess of the 55
mile per hour speed limit and disobeying a stop sign, he was unable to negotiate a turn
and got stuck in the sand.  It was only after the defendant got stuck and refused their
instruction to get out of the GMC that the agents finally seized the defendant.  A seizure
only occurs when law enforcement officers use physical force along with a show of

---

        [1] The United States agrees with the defendant that the arrest of the defendant and
search of the GMC were warrantless and without consent.

        [2]The defendant has not raised any other grounds for suppression of his
statements other than the alleged unlawful stop, arrest, and search.

authority, and the person submits to the show of authority. *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991); *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003). Since the defendant fled from the agents and refused to submit to the show of authority, his seizure did not take place until he was forcibly removed from the GMC. *See United States v. Douglass*, 467 F.3d 621, 625 (7th Cir. 2006).

### A.    Reasonable suspicion to detain

At the point the defendant was removed from the GMC, the agents had the required reasonable, articulable suspicion to detain the defendant pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The defendant's headlong flight, in and of itself, provided the agents with reasonable suspicion to pursue him and conduct a *Terry* investigation. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Lawshea*, 461 F.3d 857, 859-60 (7th Cir. 2006); *United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005).

Additionally, the traffic violations (*e.g.*, 625 ILCS 5/11-601 (speeding); 625 ILCS 5/11-305 (failure to obey stop sign)) observed by the agents further justified a *Terry* stop of the defendant. *United States v. Whren*, 517 U.S. 806 (1996) (unanimous Court) (It is beyond dispute that a police officer may temporarily detain a motorist whom he or she has probable cause to believe violated even a minor traffic law); *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005). Moreover, in determining if the officer had reasonable suspicion, the court's "objective analysis is indifferent to the relatively minor nature of the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997) (defendant pulled over for improper turn signal and improper stop). The sole analysis

6

is whether there were "circumstances sufficient to warrant a man or woman of

prudence to believe, that a moving violation ha[d] occurred." *Williams*, 106 F.2d at 1365.

The inquiry focuses on what the agents could objectively observe, not on whether the

defendant ultimately has a defense to the moving violations. *United States v. Cashman*,

216 F.3d 582, 587 (7th Cir. 2000) (stop and search can be reasonable even if the

defendant did not actually commit an offense, as long as the officer reasonably believed

an offense occurred); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (issue is not

whether defendant would have been convicted in traffic court, but whether there was

reasonable belief).

### B.    Probable cause to arrest

Furthermore, the agents not only had reasonable suspicion to detain the

defendant, they had probable cause to arrest the defendant for numerous violations,

including (1) drug trafficking activity; and (2) resisting a peace officer.  A warrantless

arrest is reasonable if agents reasonably believed the suspect had committed or was

committing a crime, given the facts and circumstances within the agents' knowledge at

the time of arrest.  *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003).

### 1.    Drug trafficking activity

In November, 2006, the agents had used a CS to purchase 61.9 grams of cocaine

hydrochloride and 26.3 grams of cocaine base ("crack") from the defendant.  On

December 14, 2006, the agents used a CS to purchase 124.4 grams of cocaine base

("crack") from the defendant in exchange of $2,500.  The negotiations for the final

7

transaction were audio recorded, and the meeting was audio and video taped.  Agents

observed the defendant leave the trailer where the transaction took place immediately

after the CS left the same trailer.  At this point, the agents had probable cause to arrest

the defendant based on their reasonable belief that he had distributed cocaine on three

separate occasions, including immediately preceding his arrest.  *Funches*, 327 F.3d at

586-87 (probable cause for warrantless arrest where trained narcotics officers observing

defendant reasonably concluded based on experience that drug transaction took place).

Further supporting the agents' assessment of probable cause, the defendant stared at

Special Agent Hoyt after he momentarily parked his vehicle following the final drug

transaction, and then engaged in flight from the agents.

Further, once the defendant was properly removed from the GMC and detained

pursuant to *Terry*, Special Agent Wolfe found 50.4 grams of cocaine base ("crack") and

7.6 grams of cocaine hydrochloride in baggies on the ground next to the truck by the

driver's side door of the GMC.  These drugs were properly found as they were in plain

view and not located during a search of either the defendant or the GMC.  *See United*

*States v. Dumas*, 94 F.3d 286, 291 (7th Cir. 1996) (no improper search occurred where

officer saw drugs in plain view on pavement outside vehicle).  Finding these

distribution amounts of cocaine on the ground outside of the GMC gave the agents

additional probable cause to arrest the defendant.

### 2.    Resisting a peace officer

Even absent the agents' reasonable belief that the defendant had engaged in

8

illegal drug trafficking, the agents had probable cause to arrest the defendant for resisting a peace officer.  After the defendant's GMC finally got stuck in the sand, the officers approached the defendant and ordered him out of the GMC.  The agents were authorized to order the defendant out of the GMC during the *Terry* stop for their own safety. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977); *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997).  As noted, *supra*, at this point, the defendant had not yet submitted to the agents' show of authority and was not yet seized.  *Hodari D.*, 499 U.S. at 628-29; *McCoy,* 341 F.3d at 605; *Douglass*, 467 F.3d at 625.  The defendant then refused the agents' command to get out of the GMC and had to be forcibly removed from the GMC.  Under Illinois law, a "person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity" commits the offense of resisting a peace officer.  720 ILCS 5/31-1(a).  The Illinois courts have held that this offense encompasses a refusal to comply with a police officer's order to exit his vehicle.  *People v. Synnott*, 811 N.E. 2d 236, 241 (2d Dist. 2004).  The defendant's resistance to being handcuffed once removed from the GMC provided the agents with additional probable cause to arrest him for resisting a peace officer.

## II.    The Agents Properly Searched the Defendant's GMC Incident to His Lawful Arrest, Based on Probable Cause, and Pursuant to Police Inventory Policy

The defendant complains that his GMC was illegally searched and that the Smith & Wesson pistol and magazine seized from inside the GMC should be suppressed.[3]  The

_____

[3]The defendant also alleges that the seized cocaine base ("crack") should be suppressed.  As noted previously, the cocaine base ("crack") was found in plain view

defendant's argument fails for three independent reasons.

First, the search of the GMC was permissible incident to the defendant's lawful arrest. It is well established that an agent who has made a lawful custodial arrest of the occupant of an automobile may search the passenger compartment of that automobile. *New York v. Belton*, 453 U.S. 454, 460-61 (1981); *United States v. Richardson*, 121 F.3d 1051, 1056 (7th Cir. 1997). The search is permitted as a matter of course, regardless of whether the officer has a subjective concern for his safety. *Richardson*, 121 F.3d at 1057. Thus, the search of the GMC was justified incident to the defendant's arrest for drug trafficking and resisting a peace officer.

Second, the search of the GMC was authorized by the Supreme Court's long-recognized exception to the warrant requirement, which permits agents to conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or evidence of illegal activity. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *Carroll v. United States*, 267 U.S. 132, 153-56 (1925). Here, the agents had more than sufficient probable cause to search the GMC for evidence of drug activity. They were aware that the defendant was previously engaged in drug trafficking activity, that he had just delivered 124.4 grams of cocaine base ("crack") to a CS in exchange for $2,500, that the CS had seen the defendant place approximately 1 ounce of crack cocaine into his jacket pocket following the transaction, that the defendant had just left the

---

on the ground outside the GMC. Thus, its admission at trial is unrelated to the lawfulness of the search of the GMC.

trailer where the drug transaction took place, that the defendant had fled from the agents and resisted arrest, and that Special Agent Wolfe had found crack and powder cocaine on the ground next to the driver's side door of the GMC. The agents could reasonably expect to find evidence of drug trafficking activity inside the GMC, and in fact, found the Smith & Wesson pistol, the loaded magazine, and the $2,500 the CS had paid to the defendant for the crack cocaine. *See United States v. Huebner*, 356 F.3d 807, 814-16 (7th Cir. 2004) (reasonable for officers to conclude there was a reasonable probability that drugs would be found in vehicle and to stop, arrest, and search defendant and vehicle).

Third, the search of the GMC was authorized as a legitimate inventory search. In general, reasonable police regulations relating to inventory searches administered in good faith satisfy the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). The Seventh Circuit has held that warrantless inventory searches are constitutionally permissible if the driver has been lawfully arrested and the search is reasonable. *United States v. Richardson*, 121 F.3d 1051, 1055 (7th Cir. 1997). In the instant case, the defendant was lawfully arrested and the defendant has not even alleged that the search that found the pistol, magazine, and $2,500 U.S. currency was in any way unreasonable.

## CONCLUSION

Based on the foregoing reasons, the United States of America respectfully requests that this Court deny the defendant's motion to suppress evidence in its entirety.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
FAX: 217-373-5891
eugene.miller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

> Stanley L. Hill, Esq.
> 651 West Washington Boulevard
> Suite 205
> Chicago, Illinois 60661

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
FAX: 217-373-5891
eugene.miller@usdoj.gov
