UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. CR07-20009 |
| ) | |
| GENE SUTTON, ) | Honorable Michael P. McCuskey |
| ) | Judge Presiding |
| Defendant. ) | |

**DEFENDANT'S REPY TO THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant, GENE SUTTON, by and through his attorney, STANLEY L. HILL, replies to the government's response to defendant's motion to suppress evidence as follows:

**RELEVANT FACTS**

Upon information and belief, defendant expects that the evidence adduced during the suppression hearing of this matter will establish the following:

In an affidavit sworn to by Special Agent CHRISTOPHER L. HOYT on December 15, 2006, made in support of a criminal complaint and arrest warrant charging GENE SUTTON with possession of more than fifty grams of cocaine base ("crack") with intent to distribute and carrying a firearm during and in relation to a drug trafficking crime, HOYT states at paragraph 6 that:

On December 14, 2006, I and other law enforcement

1

> Agents were conducting surveillance on SUTTON. We observed SUTTON drive to a residence in the area between 12,000 East and 13,000 East at 4000 South in rural Kankakee County, Illinois. SUTTON then left the area in a pick-up truck.

SUTTON does not dispute the above-facts of HOYT's affidavit.

However, HOYT continues in his affidavit stating:

> I began following SUTTON and he began to drive away from me very quickly. Officers in marked squad cars in the area turned on their take-down lights and attempted to stop SUTTON. SUTTON continued to drive very quickly and attempted to flee from officers. His pick-up truck finally came to a stop when he was unable to negotiate a turn and drove the truck into a sandy area.

Affidavit of Christopher L. Hoyt, dated December 15, 2006, at paragraph 6, attached hereto as "Exhibit A".

SUTTON denies the above sequence of events HOYT describes in his sworn affidavit is true.

SUTTON claims that after he (SUTTON) left the residence in the area between 12000E and 13000E at 4000S (*the Ridge Rd. residence*) SUTTON drove east on E. 4000S Rd. (*E. Central St. /Doney*) to S. 13000E. Rd. (*Main St.*). A Google Maps is attached hereto as "Exhibit B" that shows the area. At intersection of E. 4000S Rd. and S. 13000E Rd. (*Main St.*), SUTTON drove his pick-up truck north to E. Spinning Wheel Rd., then east on E. Spinning Wheel Rd. approximately 1/4th mile to a drive-way where SUTTON pulled into the driveway on the north side of E. Spinning Wheel Rd., parked and exited the truck. SUTTON remained at this location **approximately five to seven**

2

**minutes**. During this time, SUTTON talked with Ms. Cozart about installing an alternator in her mini-van. Sutton then proceeded to his truck to get his tools to install the alternator. While going to his truck, SUTTON observed a black Jeep Liberty vehicle pull just east of Cozart's driveway and stop on the north side of E. Spinning Wheel Rd. and park on the shoulder just east of Cozart's driveway.

While getting his tools out of his truck, SUTTON observed a white male in the black Jeep Liberty staring in his direction. SUTTON returned to Cozart's porch and had further conversation with Cozart. SUTTON told Cozart he would be back later to install her alternator because he needed to get a different set of wrenches in order to install the alternator. SUTTON then got back in his truck and drove out of the driveway and turned west on to E. Spinning Wheel Rd. and proceeded to the stop sign at S. 13000E Rd. (*Main St.*) and stopped his truck at the stop sign.

SUTTON turned north on S. 13000E Rd. (*Main St.*) and proceeded north on his way to Mondy Brother's Garage located at the intersection of E. Gamble Rd. and Main St. (*N.W. corner of E. Gamble Rd and Main St*). The gate to Mondy's was closed so SUTTON stopped his truck on the eastside of Main Street on the shoulder of the road, just a little north of Gamble Rd. SUTTON went to Mondy's to get the wrenches he needed to install the alternator but the garage was

closed. So SUTTON backed his truck into a driveway on the eastside of Main St. and then drove south on S. 13000E Rd. (*Main St.*) to E. 4000S Rd. where he stopped at the stop sign. At the stop sign, SUTTON turned west on E. 4000S Rd., on his way to his parents' house located at 10748 E. 4000S. Rd. – a distance of approximately 2.3 miles west of S 13000E Rd. (*Main Street*). As SUTTON was driving westbound on E. 4000S Rd. towards his parent's house, just west of S 11000 E. Rd (*New York*) an unmarked vehicle curbed SUTTON's truck causing him to swerve off to the south side of E. 4000S. Rd., where SUTTON's truck came to rest on the shoulder on the south side of E. 4000S. Road. At no time while driving did SUTTON violate any traffic laws. SUTTON swerved into the sandy area of the shoulder because his pick-up truck was forced off the road by an **unmarked** police vehicle.

Contrary to HOYT's statement in his affidavit that "Officer's in marked squad cars in the area turned on their take-down lights and attempted to stop SUTTON," there were absolutely no officers in "marked squad cars" in the area who stopped, or attempted to stop SUTTON; only KAMEG Special Agents in unmarked cars.

## ARGUMENT

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Temporary detention of

4

individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. See **Delaware v. Prouse**, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979);**United States v. Martinez-Fuerte**, 428 U.S. 543, 556, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976);**United States v. Brignoni-Ponce**, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. **Whren v. United States**, 517 U.S. 806, 810 (1996), citing **Prouse**, *supra*, at 659; **Pennsylvania v. Mimms**, 434 U.S. 106, 109, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977) *(per curiam)*. Thus, the police must have a legal justification to stop a vehicle. A stop without probable cause cannot survive the inhibition of the Fourth Amendment.

In the instant case, SUTTON's pick-up truck was stopped by special agents without any legal justification and without articulable facts to support the stop under the Fourth Amendment. At the time SUTTON was stopped by the agents, the agents did not have probable cause to believe SUTTON had committed or was in the process of

committing a crime, nor was SUTTON issued a traffic citation for any alleged violation of the traffic laws.

The alleged crack cocaine, the Smith & Wesson, nine millimeter semi-automatic pistol, the loaded magazine containing nine millimeter ammunition, and all oral statements allegedly made by defendant are a product of the illegal stop of SUTTON.

SUTTON denies the truth of HOYT's statements made in HOYT's affidavit that after SUTTON left the residence on Ridge Rd. in a pick-up truck, ***"(HOYT) began following SUTTON and he began to drive away from (HOYT) very quickly. Officers in marked squad cars in the area turned on their take-down lights and attempted to stop SUTTON. SUTTON continued to drive very quickly and attempted to flee from officers."***

Because HOYT's factual scenario is fictitious, there existed no probable cause under the Fourth Amendment to stop SUTTON's vehicle and the fruits of the stop must be suppressed.

First, the government cannot establish by a preponderance of the evidence the factual scenario provided by HOYT in his affidavit to justify the stop. Second, the government cannot establish by a preponderance of the evidence that SUTTON committed any traffic violations to justify SUTTON's stop. SUTTON did not receive any traffic citations; and more alarming is the fact that contrary to HOYT's

6

affidavit the government cannot establish any officers in "marked squad cars" attempted to stop, or did stop SUTTON. There were no officers in "marked squad cars" that stopped SUTTON. The only officers in "marked squad cars" who might have been in the area would have been employed by the Kankakee County Sheriff's department, and none of the discovery tendered by the government shows that any Kankekee County Sheriff's officers were involved in the stop of SUTTON - only KAMEG Special Agents in **"unmarked cars"**. Third, **assuming *arguendo*,** as the government claims in its response that SUTTON on November 1, 2006, had engaged in an alleged drug transaction with a confidential source, the alleged November 1st transaction did not provide probable cause to stop SUTTON approximately one and half (1½) months later on December 14, 2006, without an arrest warrant. Fourth, **assuming *arguendo*** on December 14, 2006, a confidential source allegedly purchased 124.4 grams of cocaine base from SUTTON in exchange for $2,500 at the trailer residence on Ridge Road (as the government claims in its response), there is no evidence that establishes that at the time SUTTON was stopped, that the special agents who stopped SUTTON, knew this alleged criminal act involving a confidential source and SUTTON had occurred. If the agents were aware SUTTON had just sold 124.4 grams to a confidential source, it is certainly very unlikely that the

government would be attempting to justify and bootstrap its probable cause for SUTTON's stop on the basis of an alleged traffic violation, which the facts do not establish occurred. Arguably, the government implicitly acknowledges there was no probable cause to believe SUTTON was engaged in illegal drug trafficking on December 1st when it admits as much in its response stating "**Even absent the agent's reasonable belief that the defendant had engaged in illegal drug trafficking,**" *United States of America Response To Defendant's Motion To Suppress* at bottom of page 8.

For the foregoing reasons, defendant GENE SUTTON, respectfully requests this Court grant his request to suppress and bar from introduction at trial of the above entitled cause the alleged crack cocaine, the Smith & Wesson, nine millimeter semi-automatic pistol, the loaded magazine containing nine millimeter ammunition, and all oral statements allegedly made by defendant which was all obtained as a result of the Sutton's illegal stop.

Respectfully submitted,

/s/ Stanley L. Hill,

**STANLEY L. HILL & ASSOCIATES, P.C.**
651 West Washington Boulevard
Suite 205
Chicago, Illinois 60661
T. (312) 917-8888
F. (312) 781-9401
E. stanhill@core.com
W. stanhilllaw.com

07/10/2007 18:41  3127819401  PAGE 01/02
2:07-cr-20009-MPM-DGB  # 25-2  Page 1 of 2
2006/DEC/21/THU 01:56 PM
E-FILED
Tuesday, 10 July, 2007 07:06:50 PM
Clerk, U.S. District Court, ILCD

## AFFIDAVIT

I, CHRISTOPHER L. HOYT, being first duly sworn on oath, depose and state as follows:



6. On December 14, 2006, I and other law enforcement agents were conducting surveillance on SUTTON. We observed SUTTON drive to a residence in the area between 12,000 East and 13,000 East at 4000 South in rural Kankakee County, Illinois. SUTTON then left the area in a pick-up truck. I began following SUTTON and he began to drive away from me very quickly. Officers in marked squad cars in the area turned on their take-down lights and attempted to stop SUTTON. SUTTON continued to drive very quickly and attempted to flee from officers. His pick-up truck finally came to a stop when he was unable to negotiate a turn and drove the truck into a sandy area.

E-FILED
Tuesday, 10 July, 2007 07:07:05 PM
Clerk, U.S. District Court, ILCD



X - trailer
O - stop sign
1 - Sandra Cozart's driveway
Y - Gene stopped by unmarked vehicle



EXHIBIT B

http://maps.google.com/                           7/2/2007