**E-FILED**
Tuesday, 11 March, 2008  04:41:31 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR 07-20009 |
| | ) | |
| GENE SUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S
MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

NOW COMES the United States of America, by Rodger A. Heaton, United States

Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United

States Attorney, and in response to Defendant's Memorandum in Support of Motion to

Suppress Evidence, filed on February 11, 2008, states as follows:

**RELEVANT FACTS**

During the evidentiary hearing on the defendant's motion to suppress, in

summary, the United States presented the following evidence through the testimony of

Special Agent Christopher Hoyt with the Drug Enforcement Administration (DEA) and

Director Robert Bodemer and Special Agents Jeff Martin, Joseph Powers, and Clayt

Wolfe of the Kankakee Area Metropolitan Enforcement Group (KAMEG):

In the fall of 2006, a confidential source (CS), told KAMEG agents that for the

past year the CS had been purchasing approximately 2 ½ ounces of crack cocaine from

the defendant, Gene Sutton, twice a month. (Tr.116)  On November 1, 2006, agents used

the CS to purchase approximately 63 grams of cocaine hydrochloride from the

defendant.  (Tr.116-18) The drug transaction took place at a trailer located at 3973 South

Ridge Road, St. Anne, Kankakee County, in the Central District of Illinois. (Tr.117-18)

The controlled buy was audio recorded, based on a state court order supported by an

affidavit signed by the CS averring that the CS had previously purchased cocaine from

the defendant. (Tr.119)  On November 27, 2006, agents of the DEA and KAMEG used

the CS to purchase approximately 28 grams of cocaine base ("crack") from the

defendant at a parking lot at 1035 Mulligan Drive, Bradley, Kankakee County, in the

Central District of Illinois. (Tr.119-120) The controlled buy was again audio recorded, as

were the telephone conversations between the defendant and the CS to arrange the

transaction. (Tr.119-121)

On December 14, 2006, agents of the DEA and KAMEG met to arrange a third

controlled buy of cocaine from the defendant. (Tr.121) DEA Agent Hoyt briefed the

agents on the two prior controlled purchases of cocaine. (Tr.303) On the previous day,

December 13, 2006, the agents had obtained state court search warrants for the trailer at

3973 South Ridge Road and the defendant's residence at 10748 East 4000 Road, St.

Anne, respectively. (Tr.122-23) The operational plan was to use the same CS to purchase

4 ½ ounces of crack cocaine from the defendant at the trailer, execute the search

warrants, and arrest the defendant. (Tr.121-22,144)

The CS was equipped with an audio and video recording device. (Tr.122,144)

Director Bodemer (who was observing the trailer with binoculars from an airplane)

2

observed the CS enter the trailer at 3973 South Ridge Road. (Tr.144-46) After a few

minutes, he observed the CS leave the trailer, followed soon thereafter by the

defendant. (Tr.145-46) The CS met with other agents and provided KAMEG Special

Agent Michael Lockwood with the 4 ½ ounces of crack cocaine, which the CS stated he

obtained from the defendant. (Tr.150,195,211) The agents searched the CI, with negative

results. (Tr.150)

In the meantime, the defendant drove away from the trailer in a black pickup

truck. (Tr.146) Agents Martin and Powers, who were together in a KAMEG vehicle

equipped with emergency lights and a siren, drove towards the area to assist in

arresting the defendant. (Tr.218-221,246-48) The defendant initially drove east on 4000

South Road and turned north on Main Street, while followed by Agent Hoyt. (Tr.152)

He then took a right on Spinning Wheel Road, which is a dead-end road, pulled into a

driveway, got out, and stood next to his car. (Tr.153-54) After Agent Hoyt drove by, the

defendant got back into his truck, drove back to Main Street and took a right on Main

Street. (Tr.155) After a quarter mile, the defendant pulled off the road, made a U-turn,

and began heading south on Main Street. (Tr.156) Agents Powers and Martin, who were

driving north on Main Street, saw the defendant's truck. (Tr.222,248)

After receiving information from Agent Lockwood that the drug transaction had

taken place, Inspector Bodemer instructed Agents Martin and Powers to stop and arrest

the defendant. (Tr.150-51,221) Agents Martin and Powers made a U-turn on Main

Street, activated their emergency lights and siren, and began following the defendant at

a distance of two to four car lengths. (Tr.222-23,249-50) The defendant failed to pull

over, and in fact, Director Bodemer and Agents Martin and Powers all observed the

defendant fail to stop at the stop sign at the intersection of Main Street and 4000 South

Road (also known as Central), and turn west on 4000 South Road. (Tr.156-57,223-24,249-

50) The agents followed the defendant with their lights and sirens on, as the defendant

drove away around 70 to 75 miles per hour. (Tr.225) After traveling on 4000 South Road

for several miles, the defendant attempted to turn into a driveway near his residence at

10748 East 4000 South Road, but turned too wide and became stuck in the sandy ditch.[1]

(Tr.157-59,224-26,250-51) The defendant continued to spin his wheels as Agents Martin

and Powers approached his vehicle. (Tr.227)

Agents Martin and Powers instructed the defendant to stop the truck, get out of

the truck, and show his hands. (Tr.227-29,252) The defendant failed to get out of the

truck or show his hands, so the agents forcibly removed him from the vehicle. (Tr.229-

31,252-53)  The defendant then resisted being handcuffed, but the agents were able to

place the handcuffs on him with the assistance of KAMEG Special Agent Clayt Wolfe,

who arrived during the struggle. (Tr.232,253-54,278-80) In Agent Wolfe's presence, DEA

Agent Hoyt advised the defendant of his *Miranda* warnings.[2] (Tr.284-85,304-05)

---

[1]While the defendant testified that officers forced him off the road, Inspector
Bodemer and Agents Martin and Powers all testified that the agents remained several
car lengths behind the defendant and did not force him off the road. (Tr.157-59,224-
26,250-51)

[2]The defendant testified that he was kicked and beaten by KAMEG agents while
Agent Hoyt watched; the officers testified that the defendant was never kicked,

After the defendant was arrested, Agent Wolfe found crack cocaine and powder cocaine in baggies on the ground next to the truck by the driver's side door of the GMC. (Tr.282-83)  Inside the GMC on the passenger's side floor board, Agent Wolfe found a semi-automatic pistol and a loaded magazine. (Tr.282-83)  On the driver's side floor board, Agent Wolfe found the $2,500 that the CS had previously paid to the defendant for the crack cocaine. (Tr.282)

Following his arrest, the defendant was taken to the Bourbonnais Police Department. (Tr.160,305) In Director Bodemer's presence, Agent Hoyt again advised the defendant of his *Miranda* warnings, this time from a written form. (Tr.161,305)  The defendant was requested to initial and sign the written form if he understood his rights, and he did so. (Tr.161-63,305-06) During the cordial interview, the defendant made numerous admissions, including that he had recently purchased 13 ½ ounces (approximately 378 grams) of powder cocaine, part of which he had cooked up into crack cocaine.  (Tr.164-65,306-07) He acknowledged that, just prior to his arrest, he had delivered some of that crack cocaine to an individual, and the cocaine that he had in his possession at the time of his arrest represented what was left over from that delivery. (Tr.165)

---

punched, or beaten during his arrest. (Tr.234,257-58,280-81) Moreover, the booking photograph presented into evidence and observations of the defendant after the stop were not consistent with the defendant's testimony that he was beaten and bloodied by the agents.

## **ARGUMENT**

In his memorandum in support of his motion to suppress evidence, the defendant continues to seek the suppression of the cocaine base ("crack"), cocaine hydrochloride, gun, currency, and other evidence found in the GMC, as well as any statements he made to law enforcement officers following his arrest. The defendant continues to argue that the agents seized the defendant's vehicle without a reasonable, articulable suspicion that the defendant had committed an offense and then arrested the defendant and searched the GMC without probable cause.[3] The defendant's argument fails because, by the time the agents were actually able to seize the defendant's vehicle, they could arrest him based on probable cause to believe he had committed numerous offenses. Additionally, they could lawfully search the defendant's GMC (1) incident to his lawful arrest; and (2) based on probable cause it would contain additional drug evidence. Finally, given that the stop and arrest of the defendant and the search of the GMC were lawful, the defendant's statements should not be suppressed as fruit of the poisonous tree.[4]

---

[3] The United States has never disputed that the arrest of the defendant and search of the GMC were warrantless and without consent.

[4] The defendant has not raised any other grounds for suppression of his statements other than the alleged unlawful stop, arrest, and search.

I.      **The Agents Properly Detained and Arrested the Defendant after He
        Completed a Drug Transaction and Fled from Them During a High Speed Car
        Chase**

In the instant case, the defendant never voluntarily pulled over in response to the

agents' attempt to stop him.  Instead, after disobeying a stop sign and fleeing at a speed

of 70 to 75 miles per hour (well in excess of the 55 mile per hour speed limit ), he was

unable to negotiate a turn and got stuck in the sand.  It was only after the defendant got

stuck and refused Agents Martin's and Powers' instruction to show his hands and get

out of the GMC that the agents finally seized the defendant.  A seizure only occurs

when law enforcement officers use physical force along with a show of authority, and

the person submits to the show of authority.  *California v. Hodari D.*, 499 U.S. 621, 628-29

(1991); *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003).  Since the defendant fled

from the agents and refused to submit to the show of authority, his seizure did not take

place until he was forcibly removed from the GMC.  *See United States v. Douglass*, 467

F.3d 621, 625 (7th Cir. 2006).  Although the defendant claimed that he was forced off the

road by the officers, the testimony of Director Bodemer and Agents Martin and Powers

established that the agents did not run him off the road and were always behind the

defendant's vehicle until his truck got stuck making too wide of a turn.  (Tr.159,226,251)

A.      **Reasonable suspicion to detain**

At the point the defendant was removed from the GMC, the agents had the

required reasonable, articulable suspicion to detain the defendant pursuant to *Terry v.*

*Ohio*, 392 U.S. 1 (1968).  The defendant's headlong flight, in and of itself, provided the

7

agents with reasonable suspicion to pursue him and conduct a *Terry* investigation.

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Lawshea*, 461 F.3d 857, 859-60

(7th Cir. 2006); *United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005).

 Additionally, the traffic violations (*e.g.*, 625 ILCS 5/11-601 (speeding); 625 ILCS

5/11-305 (failure to obey stop sign)) observed by the agents further justified a *Terry* stop

of the defendant. *United States v. Whren*, 517 U.S. 806 (1996) (unanimous Court) (It is

beyond dispute that a police officer may temporarily detain a motorist whom he or she

has probable cause to believe violated even a minor traffic law); *United States v. Muriel*,

418 F.3d 720, 724 (7th Cir. 2005). Moreover, in determining if the officer had reasonable

suspicion, the court's "objective analysis is indifferent to the relatively minor nature of

the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997)

(defendant pulled over for improper turn signal and improper stop). The sole analysis

is whether there were "circumstances sufficient to warrant a man or woman of

prudence to believe, that a moving violation ha[d] occurred." *Williams*, 106 F.2d at 1365.

The inquiry focuses on what the agents could objectively observe, not on whether the

defendant ultimately has a defense to the moving violations. *United States v. Cashman*,

216 F.3d 582, 587 (7th Cir. 2000) (stop and search can be reasonable even if the

defendant did not actually commit an offense, as long as the officer reasonably believed

an offense occurred); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (issue is not

whether defendant would have been convicted in traffic court, but whether there was

reasonable belief).

Finally, although undoubtedly the subjective reason the agents stopped the defendant was for drug trafficking activity, the objective traffic violations observed by the agents still justified the stop. *See United States v. Cervantes*, 19 F.3d 1151, 1154 (7th Cir. 1994) ("the existence of reasonable suspicion or probable cause depends not on what the particular officers involved believed but on what a reasonable officer in their position would have believed"). It is black letter law that the subjective motivations of the agents in conducting the stop are irrelevant for purposes of the Fourth Amendment. *Whren*, 517 U.S. at 813. *See also United States v. Knights*, 534 U.S. 112, 122 (2001) (The Supreme Court is "unwilling to entertain Fourth Amendment challenges based on actual motivations of individual officers"); *United States v. Moore*, 375 F.3d 580, 583 n.1 (7th Cir. 2004).

### B.     Probable cause to arrest

Furthermore, the agents not only had reasonable suspicion to detain the defendant, they had probable cause to arrest the defendant for multiple violations, including (1) drug trafficking activity; and (2) resisting a peace officer. A warrantless arrest is reasonable if agents reasonably believed the suspect had committed or was committing a crime, given the facts and circumstances within the agents' knowledge at the time of arrest. *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003).

#### 1.     Drug trafficking activity

In November, 2006, the agents had used a CS to purchase approximately 63 grams of cocaine hydrochloride and 28 grams of cocaine base ("crack"), respectively,

from the defendant on two separate occasions,. On December 14, 2006, the agents used

a CS to purchase 4 ½ ounces of cocaine base ("crack") from the defendant at the same

trailer where one of the previous controlled buys had taken place. The telephone

negotiations for the final transaction were audio recorded, and the meeting was audio

and video taped. Director Bodemer observed the CS arrive at the trailer where the

transaction took place and then leave the trailer after a few minutes, followed

immediately by the defendant. The CS then met with Agent Lockwood, provided him

with the crack cocaine, and Agent Lockwood informed Director Bodemer that the drug

transaction had taken place. At this point, the agents had probable cause to arrest the

defendant based on their reasonable belief that he had distributed cocaine on three

separate occasions, including immediately preceding his arrest. *Funches*, 327 F.3d at

586-87 (probable cause for warrantless arrest where trained narcotics officers observing

defendant reasonably concluded based on experience that drug transaction took place).

Further supporting the agents' assessment of probable cause, the defendant engaged in

evasive driving after he left the trailer, and then ran a stop sign and engaged in flight

from the agents.

Although the defendant complains that the agents did not personally observe the

controlled buy on December 14, 2006, his complaint is of no constitutional consequence.

The same is true of his argument that the decision to arrest the defendant was made

before agents knew that the CS had actually obtained cocaine from the defendant on

December 14. Given the two prior controlled purchases made by the same CS from the

defendant, the recorded telephone call between the defendant and the CS arranging the

drug transaction at the trailer, and the observations of Director Bodemer of the CS and

the defendant leaving the trailer together after a few minutes, the agents had probable

cause to stop, arrest, and search the defendant as soon as the defendant left the trailer

and engaged in evasive driving.  *See, e.g., United States v. Huebner*, 356 F.3d 807, 815-16

(7th Cir. 2004) (although agents did not observe drug transaction, the agents

surveillance of the defendant, when considered in conjunction with an informant's

information, provided probable cause for stop, arrest, and search of defendant and his

vehicle); *United States v. Navarro*, 90 F.3d 1245, 1252-55 (7th Cir. 1996) (warrantless

vehicle stop, search, and arrest justified by probable cause based on informant's

information, corroborated by officers' surveillance); *United States v. Colonia*, 870 F.2d

1319, 1325-26 (7th Cir. 1989) (warrantless arrest supported by probable cause based on

informant's tip and officer's observations of "circuitous driving" on the day in

question).

Nonetheless, the defendant's main argument following the hearing appears to be

that, despite Director Bodemer's testimony to the contrary, Agent Lockwood did not

communicate that the drug deal had taken place before the defendant was arrested.  As

noted, *supra*, this is irrelevant as the agents possessed probable cause based on the prior

drug transactions and the information they possessed (even exclusive of Agent

Lockwood's information) regarding the drug transaction on December 14, 2006.

Moreover, even if Director Bodemer had not testified (which he did) that he received

11

Agent Lockwood's information before the defendant was stopped, such testimony is

unnecessary under the "collective knowledge doctrine":

> Courts have applied the collective knowledge doctrine . . .
> "when officers are in communication with each other while
> working together at a scene."  In [this] group of cases, the
> knowledge of the officers may be imputed to one another
> "even when there is no express testimony that the specific or
> detailed information creating the justification for a stop was
> conveyed . . . ."

*United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (citations omitted); *see also United*

*States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000) (because officer was in communication

with other task force officers at scene, officer's knowledge can be imputed to arresting

officer; it does not matter what arresting officer knew at time of initiating arrest).

Nonetheless, the defendant argues for a "missing witness inference" because the

United States did not call Agent Lockwood as a witness.  The defendant's argument is

frivolous.  First of all, as noted, the agents possessed probable cause to stop, arrest, and

search the defendant without the information possessed by Agent Lockwood.  Second,

no such express testimony that Agent Lockwood conveyed the information to other

agents was required under the collective knowledge doctrine.  Third, Director Bodemer

did provide express testimony that Agent Lockwood told him the drug transaction was

completed prior to the defendant's stop, arrest, and search.  Fourth, during the

suppression hearing, the defendant admitted into evidence the report of Agent

Lockwood, which stated that the CS provided Agent Lockwood with the crack cocaine

he obtained from the defendant.  Fifth, the defendant provides no authority whatsoever

for applying a missing witness inference during a suppression hearing, other than an ancient United States Supreme Court case that actually found it error to allow the government to argue the missing witness inference in a murder case. *See Graves v. United States*, 150 U.S. 118, 121 (1893).

Sixth, assuming *arguendo* that the missing witness inference is available at a suppression hearing, the Seventh Circuit has held that even during a trial it is only available where the defendant proves that (1) the absent witness was peculiarly within the government's power to produce; and (2) the testimony would have elucidated other issues in the case and not have been merely cumulative. *United States v. Eberhart*, 467 F.3d 659, 665 (7th Cir. 2006). The defendant can prove neither. Defense counsel's own statements during the suppression hearing make it clear that Agent Lockwood was available as a witness for the defendant, if he so wished. Defense counsel initially told the Court he did not need Agent Lockwood as a witness and did not wish to reopen his case. (Tr.301-02) Defense counsel later appeared to change his mind and told the Court he wished to call Agent Lockwood. (Tr.317) He further represented he had spoken with Agent Lockwood and he would be available to testify on Wednesday afternoon. (Tr.317) Defense counsel then reversed his position again and told the Court he had decided not to call Agent Lockwood as a witness and would rest on his presentation of evidence. (Tr.318) Since Agent Lockwood was at all times available to the defendant as a witness and the defendant clearly chose not to call him, no missing witness inference is appropriate.

Moreover, the defendant has presented absolutely no evidence that the testimony would not have been merely cumulative.  In fact, it would have been cumulative given Director Bodemer's testimony that he received the information from Agent Lockwood and Agent Lockwood's corroborative report that states that the CS told him he obtained the crack cocaine from the defendant; the decision of both the defendant and the United States not to call a cumulative witness at the conclusion of a very lengthy hearing does not warrant any missing witness inference, either as a matter of law or common sense.

Further, once the defendant was properly removed from the GMC and detained pursuant to *Terry*, Agent Wolfe found cocaine base ("crack") and cocaine hydrochloride in baggies on the ground next to the truck by the driver's side door of the GMC.  These drugs were properly found as they were in plain view and not located during a search of either the defendant or the GMC.  *See United States v. Dumas*, 94 F.3d 286, 291 (7th Cir. 1996) (no improper search occurred where officer saw drugs in plain view on pavement outside vehicle).  Finding this cocaine on the ground outside of the GMC gave the agents additional probable cause to arrest the defendant.

The defendant complained during the suppression hearing that the agents had initially claimed to have performed a "traffic stop" of the defendant and failed to reveal the full extent of their knowledge regarding his drug trafficking activities.  This was done, of course, to protect the integrity of their investigation and the safety of the confidential source and in no way affects the validity of the defendant's stop and arrest.

14

*United States v. Cervantes*, 19 F.3d 1151 (7th Cir. 1994). In *Cervantes*, after observing a

drug transaction, the officers pretended to stop the defendant for traffic violations. *Id.* at

1153. In upholding the subsequent search of the defendant's car and the defendant's

arrest, the Seventh Circuit stated

> It is true that the officers did not purport to make an
> investigatory stop. They pretended to be stopping
> Cervantes for traffic violations. But we do not see how such
> a ruse can confer a constitutional privilege on the target of it.
> Assuming that [the officer] did lie and that the officers
> searched through the interior of the car . . . , they did nothing
> more than the Fourth Amendment as interpreted in the *Terry*
> line of cases authorized them to do. The lie, if it was a lie,
> was gratuitous.
>
> It is entirely possible that the surveillance which preceded
> the stop gave the officers more than reasonable suspicion –
> gave them probable cause to arrest Cervantes for drug
> offenses, or, independently of any arrest, probable cause to
> search the car for the proceeds of the sale to Diaz.

*Id.* Similarly, in the instant case, the agents' prior surveillance of the controlled buy

gave them not only reasonable suspicion, but probable cause to arrest the defendant for

drug offenses, as well as probable cause to search the GMC truck for the proceeds of the

sale of the cocaine (which were then found in the truck).

Although, as detailed above, there was certainly additional circumstances

justifying the stop, arrest, and search of the defendant after the two initial controlled

buys, those controlled buys alone also justified the defendant's arrest. In fact, the CS

had submitted an affidavit averring the defendant's ongoing drug sales, and the

previous day a state court had already found that the two prior controlled purchases

15

established probable cause to issue a search warrant for the very trailer where the

December 14 controlled buy was to take place. A warrantless arrest is reasonable if

agents reasonably believed the suspect *had committed* or was committing a crime.

*Funches*, 327 F.3d at 586 (emphasis added). The defendant cites no authority

whatsoever for his self-serving claim that a crime committed 16 days earlier is "too

remote in time for a warrantless stop."

### 2.    Resisting a peace officer

Even absent the agents' reasonable belief that the defendant had engaged in

illegal drug trafficking, the agents had probable cause to arrest the defendant for

resisting a peace officer. After the defendant's GMC finally got stuck in the sand, the

officers approached the defendant and ordered him out of the GMC. The agents were

authorized to order the defendant out of the GMC during the *Terry* stop for their own

safety. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977); *Maryland v. Wilson*, 519 U.S. 408, 414-

15 (1997). As noted, *supra*, at this point, the defendant had not yet submitted to the

agents' show of authority and was not yet seized. *Hodari D.*, 499 U.S. at 628-29; *McCoy*,

341 F.3d at 605; *Douglass*, 467 F.3d at 625. The defendant then refused the agents'

command to get out of the GMC and had to be forcibly removed from the GMC. Under

Illinois law, a "person who knowingly resists or obstructs the performance by one

known to the person to be a peace officer . . . of any authorized act within his official

capacity" commits the offense of resisting a peace officer. 720 ILCS 5/31-1(a). The

Illinois courts have held that this offense encompasses a refusal to comply with a police

16

officer's order to exit his vehicle. *People v. Synnott*, 811 N.E. 2d 236, 241 (2d Dist. 2004). The defendant's resistance to being handcuffed once removed from the GMC provided the agents with additional probable cause to arrest him for resisting a peace officer.

In fact, the Seventh Circuit recently upheld an arrest and search of a defendant on similar facts in *United States v. Thomas*, 512 F.3d 383 (7th Cir. 2008). In *Thomas*, the court found there was probable cause for the defendant's arrest and search following a traffic stop based on the evidence in the district court:

> The district court credited the officers' testimony when it found that Thomas's "refusal to exit the van in compliance with Officer Marion's directions . . . leading to [Thomas's] cuffing and arrest would authorize the ensuing search of [Thomas] pursuant to his arrest for 'resisting' a police officer." The record supports the contention that Thomas resisted the officers' efforts to detain and cuff him. Thomas's struggle with the officers gave them probable cause to arrest him . . . .

*Id.* at 387-88.

**II.     The Agents Properly Searched the Defendant's GMC Incident to His Lawful Arrest and Based on Probable Cause**

In his memorandum, the defendant focuses solely on the propriety of the stop and arrest of the defendant. Assuming the stop and arrest were proper, he does not further argue that his GMC was illegally searched and that the Smith & Wesson pistol and magazine seized from inside the GMC should be suppressed.[5] The defendant's

---

[5]As noted previously, the cocaine base ("crack") was found in plain view on the ground outside the GMC. Thus, its admission at trial is unrelated to the lawfulness of the search of the GMC.

failure to further pursue this issue is understandable.  As noted in its previous response to the defendant's motion to suppress, the search of the GMC is justified by two independent reasons.

First, the search of the GMC was permissible incident to the defendant's lawful arrest.  It is well established that an agent who has made a lawful custodial arrest of the occupant of an automobile may search the passenger compartment of that automobile. *New York v. Belton*, 453 U.S. 454, 460-61 (1981); *United States v. Richardson*, 121 F.3d 1051, 1056 (7th Cir. 1997).  The search is permitted as a matter of course, regardless of whether the officer has a subjective concern for his safety. *Richardson*, 121 F.3d at 1057. Thus, the search of the GMC was justified incident to the defendant's arrest for drug trafficking and resisting a peace officer.

Second, the search of the GMC was authorized by the Supreme Court's long-recognized exception to the warrant requirement, which permits agents to conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or evidence of illegal activity.  *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *Carroll v. United States*, 267 U.S. 132, 153-56 (1925).  Here, the agents had more than sufficient probable cause to search the GMC for evidence of drug activity.  They were aware that the defendant was previously engaged in drug trafficking activity, that he had just delivered 4 ½ ounces of cocaine base ("crack") to a CS in exchange for currency, that the defendant had just left the trailer where the drug transaction took place, that the defendant had fled from the agents and resisted arrest, and that Agent

18

Wolfe had found crack and powder cocaine on the ground next to the driver's side door

of the GMC.  The agents could reasonably expect to find evidence of drug trafficking

activity inside the GMC, and in fact, found the Smith & Wesson pistol, the loaded

magazine, and the $2,500 the CS had paid to the defendant for the crack cocaine.  *See*

*Huebner*, 356 F.3d at 814-16 (reasonable for officers to conclude there was a reasonable

probability that drugs would be found in vehicle and to stop, arrest, and search

defendant and vehicle).


## CONCLUSION

Based on the foregoing reasons, the United States of America respectfully

requests that this Court deny the defendant's motion to suppress evidence in its

entirety.


Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY


s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
FAX: 217-373-5891
eugene.miller@usdoj.gov

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2008, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

> Stanley L. Hill, Esq.
> 651 West Washington Boulevard
> Suite 205
> Chicago, Illinois 60661


> s/ Eugene L. Miller
> Eugene L. Miller, Bar No. IL 6209521
> Assistant United States Attorney
> United States Attorney
> 201 S. Vine St., Suite 226
> Urbana, IL 61802
> 217/373-5875
> FAX: 217-373-5891
> eugene.miller@usdoj.gov