UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Docket No. 07-20009 |
| GENE SUTTON, | ) Honorable Michael P. McCuskey, |
| Defendant. | ) Chief U.S. District Judge |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

NOW COMES the defendant, GENE SUTTON, by and through his attorney, STANLEY L. HILL, and replies to the government's response to defendant's memorandum in support of motion to suppress evidence as follows:

1.  The government did not establish by a preponderance of the evidence that Director Robert Bodemer received information from Agent Lockwood prior to instructing Agents Martin and Powers to stop and arrest the defendant that the confidential informant purchased 4 ½ ounces of crack cocaine from the defendant. Trooper Mike Lockwood's report, Defendant's Exhibit 6 at page 40, does not state they attempted to stop defendant based upon an alleged controlled sale that had occurred inside the trailer. R. 199, 200. Nor does Lockwood's report show that Lockwood relayed any information to Bodemer that the confidential source had purchased 4 ½ ounces of crack cocaine from defendant. According to Lockwood's report, the stop was a traffic stop on Sutton's truck. See Defendant's Exhibit 6 at page 40. The agents were instructed that if the target (Sutton) was to go mobile, they were to conduct a traffic stop. R. 235. Agent Martin testified he was not told that a controlled buy had occurred inside the trailer. R. 243. Martin's instructions were solely to take defendant down if he went mobile. R. 244. Agent Powers

1

was working with Martin and testified if defendant left in his vehicle their assignment was to pull over the vehicle. R. 247-248. Bodemer told Powers the subject had gone mobile, described the vehicle and to go ahead and make a traffic stop as was the plan. R. 259. Powers did not testify that Bodemer stated over the radio that a controlled buy had occurred. Agent Clayt Wolfe was in radio contact with Lockwood and Bodemer. R. 275. Wolfe never included in any report that Lockwood talked to the informant between 10:00 a.m. and 12:16 p.m. on December 14, 2006 regarding what had happened inside the trailer. R. 295-297. The government's case agent, Christopher Hoyt, testified the communication summary does not indicate Lockwood stated to Bodemer the confidential source stated the controlled sale had occurred inside the trailer. R. 313-314. Hoyt testified all the agents were in radio communication and he does not remember Lockwood saying over the radio to anyone that the confidential source just said he made a controlled buy. R. 313. Hoyt admitted none of the agents testified they heard Lockwood say it. R. 314. Hoyt testified they were in radio communication throughout and there's no indication in any reports of Lockwood saying anything about a controlled sale having taken place. R. 315.

Bodemer was impeached by his fellow agents regarding his testimony that he received a radio transmission from Lockwood before he instructed Martin and Powers to stop and arrest defendant. The government could have but chose not to call Agent Lockwood to corroborate that he spoke with the confidential source and notified Bodemer before defendant was stopped. Whether or not the failure to call Lockwood gives rise to the *missing witness inference* that Lockwood's testimony would have been

adverse to the government, *United States v. Eberhart*, 467 F. 3d 659, 665 (7th Cir. 2006), the government did not rehabilitate Bodemer.

Admittedly, when law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine. *United States v. Parra*, 402 F. 3d 752, 764 (7th Cir. 2005) and *United States v. Sawyer*, 224 F. 3d 675, 680 (7th Cir. 2000). However, the government did not establish that prior to defendant's seizure at 12:14 p.m. on December 14, 2006, when Bodemer instructed Martin and Powers to stop and arrest defendant, that any agents had knowledge that the defendant had committed or was committing a crime. The *collective knowledge doctrine* does not help the government's position because the evidence did not establish the agents knew what transpired inside the trailer **before** defendant was stopped and arrested.

2. The instant case is distinguishable from *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991) and *United States v. Douglass*, 467 F. 3d 621, 625 (7th Cir. 2006) cited at page 7 of the government's response. In the present case, the defendant's truck was stopped and the defendant forcibly removed from the truck, before the agents allegedly found cocaine outside defendant's truck and a gun and money inside the truck. All of the items the defendant seeks to suppress from evidence were discovered by the agents after the defendant was physically seized by the agents. Thus, under the definition of seizure articulated in *Hodari* and *Douglass*, the message that the defendant was not free to leave *had* been conveyed by the agents, and a Fourth Amendment seizure occurred before the agents found the evidence. *Hodari*, 499 U.S. at 628.

3. The cases cited by the government under the section of the government's response entitled "Reasonable suspicion to detain" Government Response at pages 7-9, are inapposite. In the instant case, the agents were previously instructed that if the defendant was to go mobile, they were to conduct a traffic stop. R. 235. When Agents Martin and Powers stopped defendant, they were not conducting a *Terry* investigatory stop. The defendant was not stopped because the agents had a "reasonable suspicion to temporarily detain" as in the cases cited by the government. Unlike in *Illinois v. Wardlow*, 528 U.S. 119 (2000), *United States v. Lawshea*, 461 F.3d 857 (7th Cir. 2006), and *United States v. Baskin*, 401 F.3d 788 (7th Cir. 2005), in the instant case the agents were not making a *Terry* investigatory stop. The reason defendant was stopped was because the agents had been instructed to conduct a traffic stop if defendant were to go mobile. R. 235-237. And a prearranged planned stop of defendant if he went mobile is not a recognized exception to the warrant requirement.

Moreover, *United States v. Whren*, 517 U.S. 806 (1996), *United States v. Muriel*, 418 F. 3d 720, 724 (7th Cir., 2005), *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997) *United States v. Cashman*, 216 F. 3d 582, 587 (7th Cir. 2000) and *United States v. Smith*, 80 F. 3d 215, 219 (7th Cir. 1996), the cases cited at page 8 of the government's response regarding traffic violations are also inapposite. Defendant was not stopped because of any traffic violations. Special Agent Martin testified his basis for stopping Sutton was because he had been instructed that if the target [Sutton] went mobile he was to take him down. R. 240. Martin's instructions were **solely** to take defendant down if he went mobile. R. 244.

4

Additionally, the instant case is distinguishable from *United States v. Cervantes*, 19 F. 3d 1151, 1154 (7th Cir 1994) cited at page 9 of the government's response. *Cervantes* was affirmed by the Court of Appeals as a *Terry* investigatory stop. See *Cervantes* at 1153. In the present case, the agents did not make a *Terry* stop, but stopped defendant because they had been instructed to stop defendant if he went mobile. R. 235 - 237. Admittedly, it is black letter law that the subjective motivations of the agents in conducting a stop are irrelevant for purposes of the Fourth Amendment analysis. *Whren*, 517 U.S. at 813. However, a prearranged planned stop of defendant if he went mobile – the reason for the stop of defendant in this case - is not objectively justifiable behavior under the Fourth Amendment. Unlike in *Whren*, in the instant case, it is not contended the agents had an ulterior subjective motivation for stopping the defendant. Here the motivation for stopping the defendant is clear and undisputed by the defendant – ***defendant was stopped because the prearranged plan was to stop him if he went mobile.*** R. 235, 236, 237, 240, 244, 258, 259, and 260. This Court clarified in its questioning of Director Bodemer, whether any violation of any traffic laws had occurred or not, defendant would still have been stopped. R. 192-93. The defendant's Fourth Amendment challenge in this case is not based on the ***actual motivations*** of individual agents, as was the case in *Whren, United States v. Knight*, 534 U.S. 112, 122 (2001) and *United States v. Moore*, 375 F.3d 580, 583 n.1 (7th Cir. 2004), thus the government's reliance on these cases to support its position is misplaced.

4. The agents did not have probable cause to arrest defendant for drug trafficking activity. See Government's Response at page 9. If the two alleged drug transactions occurring approximately 43 and 16 days before defendant was arrested on

5

December 14, 2006 is the basis for defendant's warrantless arrest, these two alleged drug transaction are too remote in time and an arrest warrant was required to arrest defendant for these alleged criminal acts. Under federal law, the warrant must be issued by a federal magistrate judge or a state court of record within the federal district. FED. R. CRIM. P. 41(a). In *Johnson v. United States*, 333 U.S. 10 (1948), the Supreme Court stated: [t]he point of the Fourth Amendment ... is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn from a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. *Id.* at 13-14; see *Steagold v. U.S.* 451 U.S. 204, 212 (1981) (warrant necessary because law enforcers "may lack sufficient objectively to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interest in protecting his own liberty"). The instant case is distinguishable from cases of *United States v. Huebner*, 356 F. 3d 807, 815-16 (7th Cir. 2004), *United States v. Navarro*, 90 F. 3d. 1245, 1252-55 (7th Cir. 1996), and *United States v. Colonia*, 870 F.2d 1319, 1325-26 (7th Cir. 1989) cited by the government. In those cases, there was a "fair probability" that narcotics would be found in the defendants' vehicles at the time they were stopped based on an informant's tip. In the instant case, defendant was not stopped because there was a "fair probability" that narcotics would be found in the defendant's truck based on an informant's tip. The defendant was stopped because the prearranged plan was to stop him if he went mobile, not because of an informant's tip that narcotics would be found in defendant's truck. See R. 235, 236, 237, 240, 244, 258, 259, and 260.

Moreover, the government's reliance on *United States v. Funches*, 327 F. 3d 582, 586 (7th Cir. 2003) is inapplicable to the facts of the instant case. The evidence does not establish that at the time the defendant was arrested without a warrant that the agents reasonably believed defendant had committed or was committing a crime. Director Bodemer admitted that none of the officers had any basis upon which to base probable cause because they had no real-time knowledge of what had transpired inside the trailer. R. 172. At the time that defendant left the trailer, Bodemer admitted he did not know whether or not an alleged transaction involving alleged crack cocaine had occurred. R. 172. Bodemer admitted that at the time defendant drove away from the trailer he "didn't have probable cause for incidents on the date of the 14[th] at that time." R. 173.

The government's reliance on *United States v. Dumas*, 94 F. 3d 286, 291 (7th Cir. 1996) is misplaced. In *Dumas* the stop and detention were justified as a follow-up to an apparent traffic violation and Dumas' Fourth Amendment rights were not violated since the ensuing brief detention prior to the discovery of the cocaine was justified for investigation of the traffic violation. In the instant case, defendant was seized by the agents *before* the cocaine was found outside the vehicle and the gun and money found inside the vehicle, and defendant's stop and detention was not a follow-up to an apparent traffic violation but a ***prearranged plan to stop defendant if he went mobile,*** unlike in *Dumas.* And as stated previously, a prearranged plan to stop defendant if he went mobile is not a recognized exception to the warrant requirement. .

5.     The agents did not have probable cause to arrest defendant for resisting arrest. See Government's Response page 9. The cases cited by the government *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) and *Maryland v. Wilson*, 519 U.S. 408,

414-15 (1997) are distinguishable. In each of these cases, the defendant was stopped for a valid traffic violation. In the instant case, the defendant was not stopped for a valid traffic violation but was seized because there was a ***prearranged plan to stop defendant if he went mobile.*** See R. 235, 236, 237, 240, 244, 258, 259, and 260. Additionally, the instant case is distinguishable from *People v. Synnott*, 811 N.E. 2d 236, 241 (2nd Dist. 2004) which states that following a lawful traffic stop, the police may, as a matter of course, order the driver and the passengers out of the vehicle pending the completion of the stop without violating the protections of the Fourth Amendment. In the instant case, unlike in *Synnott*, the agents did not conduct a **"lawful traffic stop"** when defendant was ordered from the vehicle. The agents in the present case stopped the defendant based on a ***prearranged plan to stop defendant if he went mobile-not a lawful traffic stop.*** See R. 235, 236, 237, 240, 244, 258, 259, and 260. The instant case is also distinguishable from *United States v. Thomas*, 512 F.3d 383 (7th Cir. 2008) because unlike in *Thomas*, the instant case was not a *Terry* investigatory stop, but a ***prearranged plan to stop defendant if he went mobile.*** See R. 235, 236, 237, 240, 244, 258, 259, and 260.

6. The search of defendant's vehicle was unlawful. The instant case is distinguishable from *United States v. Richardson*, 121 F. 3d 1051, 1056 (7th Cir. 1997) because in *Richardson*, the defendant was lawfully arrested for driving without a valid driver's license, thus the arresting trooper was authorized, under the search incident to arrest doctrine, to search appellant's car. In the instant case, the defendant was seized because the ***prearranged plan was to stop defendant if he went mobile,*** See R. 235, 236, 237, 240, 244, 258, 259, and 260. Unlike in *Richardson*, there was no lawful justification

8

for arresting defendant, only the agent's unlawful plan to stop defendant if he went mobile.

7.  The case is distinguishable from *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) and *Carroll v. United States*, 267 U.S. 132, 153-56 (1925). In the instant case, the agents did not have probable cause to believe the vehicle contained contraband or evidence of illegal activity. The evidence is unrebutted that the solitary reason defendant was seized and searched is because the ***prearranged plan was to stop defendant if he went mobile.***

## CONCLUSION

Based on the evidence presented at the hearing on defendant's motion to suppress evidence and for the various reasons stated in defendant's motion, memorandum and reply, defendant respectfully requests this Honorable Court grant his motion to suppress evidence in this case.

Respectfully submitted,

/s/ Stanley L. Hill,
   Attorney for Defendant Gene Sutton

STANLEY L. HILL & ASSOCIATES, P.C.
651 West Washington Boulevard Suite 205
T. 312.917.8888
F. 312.781.9401
E. stanhill@core.com
W. stanhilllaw.com